338

entered into a lease, plaintiff had a right to rely upon the acts of the Government's agent. Then and there, in the absence of fraud or mutual mistake, the question of valuation and rental was once and for all put to rest, since there can be no question but that the rental stated in the lease based upon the original appraisal was not in violation of the Economy Act of 1932, supra.

The defendant argues further that the appraiser took into consideration only the insurance value and hence the appraisal was void because not made under standards imposed by law.

■ The facts do show that the insurance value was used to determine the appraised value and under the criteria set out in the Manual of Operations of the Public Buildings Administration of the Federal Works Agency, this was a factor to be taken into consideration. Furthermore, the appraisal itself shows that this was not the only thing considered. The appraisal report of Hawkinson shows that he considered not only the fire insurance appraisals but the physical aspects of the property, reproduction costs, income, assessed value and *comparable sales data*. This we believe constitutes a sufficient basis for a full and fair appraisal.

Another objection raised by the defendant to the appraisal is that it was not made until after the lease was signed. However, the facts show that an oral statement of value was made to the leasing officer and that a formal written and signed appraisal was supplied shortly thereafter. From this we cannot conclude that an appraisal was not made and supplied to the leasing officer prior to the execution of the lease.

■ In conclusion we feel that the appraisal followed the standards then in effect and the lease entered into between plaintiff and the Government was valid and binding on both parties. From this we conclude that plaintiff is entitled to damages amounting to the sum of the rentals as agreed upon from the first day of August 1955, when defendant ceased to pay the rent, up to and through June 18, 1956, when defendant filed a declaration of taking. We further conclude that inasmuch as we hold the lease to be valid, defendant is not entitled to recover on its counterclaim and the counterclaim will be dismissed.

Plaintiff's motion to strike the second, third, and fourth defenses is granted and said portions of defendant's answer will be stricken. Plaintiff's motion for partial summary judgment is granted. The amount of recovery will be determined pursuant to Rule 38(c) of the Rules of this court.

It is so ordered.

JONES, Chief Judge, and MADDEN and LITTLETON, Judges, concur.

WHITAKER, Judge, took no part in the consideration and decision of this case.

**Rush H. KRESS, Executor of the Estate of Samuel H. Kress**

v.

**UNITED STATES.**

**Nos. 325–52, 417–54, 418–54.**

United States Court of Claims.

March 5, 1958.

Harman Hawkins, New York City, for plaintiff. Orwill V. W. Hawkins and Duer, Strong & Whitehead and Ernest D. Fiore, Jr., New York City, were on the briefs.

Elizabeth B. Davis, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for the defendant. James P. Garland, Washington, D. C., was on the brief.

MADDEN, Judge.

The plaintiff as executor sues for the recovery of income taxes paid by his testator, Samuel H. Kress, for the years 1946, 1947, and 1948. Samuel H. Kress will be referred to herein as "the taxpayer."

Section 120 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 120 provided, in effect, that if an individual made contributions to charity in the taxable year and in each of the ten preceding taxable years, which contributions in each year plus the amount of his income taxes and certain other taxes paid in that year exceeded 90 percent of his net income for that year as computed without the benefit of section 23(o), then the 15 percent limit prescribed in section 23(o) should not be applicable. Thus one who qualified under this statute could give all or no less than 90 percent of his income to charity, and deduct the entire amount so given from his taxable income, whereas the ordinary taxpayer could deduct charitable contributions only to the extent of 15 percent of his otherwise taxable income.

The instant suit is based on the proposition that for each of the ten years preceding the year 1946 and for the taxable year itself, Mr. Kress gave to charity amounts which, when the amounts of his income taxes and certain other taxes were added to them, came to more than 90 percent of his net income. Whether he did or not depends, as to six of the years, on what his "net income" was, within the meaning of section 120, in those years. If his "net income" included the entire amount of his long term capital gains for those years, his charitable constributions plus his taxes did not amount to 90 percent of it. If, however, his net income included only that percentage of such capital gains as was taxable as income, the 90 percent requirement was complied with.

The plaintiff contends that the words "net income" as used in section 120 have the same meaning that they have in the tax statutes as a whole. Section 117 of the 1939 Internal Revenue Code, 26 U.S. C.A. § 117, relates to capital gains and losses. Paragraph (a) is devoted to definitions of terms as used in the income tax chapter. Paragraph (a) (4) defines "long-term capital gain" as the gain from the sale or exchange of a capital asset

held for more than six months "if and to the extent such gain is taken into account in computing gross income." Section 117(b) as then written said that only 50 percent of the gain on the sale of a capital asset held for more than 6 months "shall be taken into account in computing net capital gain, net capital loss, and *net income*." Revenue Act 1942, § 150(c), 26 U.S.C.A. Int.Rev.Acts. [Italics added.]

The provisions of the Revenue Act of 1938 (52 Stat. 447) were the same except that they provided various percentages for various holding periods. For the years 1936 and 1937 there is no capital gains question in the instant case.

The Government points out that section 21 defines net income as gross income computed under section 22, less the deductions allowed by section 23; that section 22 provides that gross income includes, among many other things, gains and profits derived from sales or dealings in property. If net income is really what is left when the deductions allowed by section 23 are subtracted from all that the taxpayer has gained, including all of his long term capital gains, then of course the taxpayer who seeks to have the advantage of the 90 percent provision of section 120 must include all of his capital gains in his multiplicand.

If one takes section 21 literally and subtracts the section 23 deductions from the broadside inclusion of section 22, he arrives at a figure which is of no use to him in computing his income tax. On the tax return form he does not make that deduction. He first reduces his capital gains to the percentage which is taxable, then adds together that amount and his other fully taxable items, and from the sum subtracts his section 23 deductions.

In United States v. Benedict, 338 U.S. 692, 70 S.Ct. 472, 94 L.Ed. 478, and Commissioner v. Central Hanover Bank, 2 Cir., 1947, 163 F.2d 208; certiorari denied sub nom. Trust of Andrus v. Commissioner, 332 U.S. 830, 68 S.Ct. 208, 92 L.Ed. 404, the courts held that, in computing the percentages of gross income which a trust taxpayer may deduct under section 162(a) for charitable contributions, the multiplicand must include only the taxable percentage of long term capital gain. The Government's present position contradicts its position and that of the courts in the cases just cited. It is hardly possible that the words "net income" used in section 120 can include more than the words "gross income" in sections 23(o) and 162(a), particularly since section 120 contains a pointed reference to section 23(o).

We think that the specific provision of section 117(b) as to what percentage of capital gains are to be taken into account in computing net income must take priority over the broad general provisions of section 22. Section 22 does little more than list the items of income that are, in one way or another, to be dealt with in the statute. One must look to more specific provisions of the statutes to learn the details of how they are to be taxed.

The Government points out that section 120 was originally enacted at a time when capital gains were taxed at 100 percent. So long as that was true, there could of course be no question as to their 100 percent includibility in gross income and in net income. The later statutory exclusion of a percentage of the capital gain from taxability would seem, however, to have the same effect upon section 120 computations as would, for example, a statutory exclusion of dividends, or earned income, or salary received from a state.

The Government points out that the taxpayer did not in fact include even the 50 percent of his capital gains in his income taxable at graduated rates, but took advantage of the alternative method of paying a 25 percent tax on the entire amount of those gains. This method is permitted by section 117(c). We think that section does not affect the specific definition of net income given in section 117(b).

▆▆ There is a special problem concerning the year 1938. The taxpayer paid income taxes and made charitable

contributions in 1938 to the extent of more than 90 percent of his net income for the year. However, section 214(e) of the Revenue Act of 1939, c. 247, 53 Stat. 862, 26 U.S.C.A. Int.Rev.Acts, page 1180, retroactively increased the taxpayer's net income for 1938 by more than $250,000. The taxpayer's charitable contributions and income taxes paid in 1938 constituted less than 90 percent of this retroactively increased 1938 net income. The taxpayer did not, of course, have the power to make charitable contributions and tax payments in 1939, and have them treated as if they had been made in 1938. The plaintiff urges that the taxpayer, having fulfilled in 1938 the requirements of the law as it was in 1938, did not lose his partially acquired status under section 120 as a result of the retroactive statute.

The power of Congress to enact income tax laws with retroactive effect is clear. The instant problem is whether Congress intended its 1939 Act, undoubtedly retroactive as to the imposition and collection of additional taxes on 1938 income, to have the further effect of retroactively and irreparably breaking a chain of conduct which other legislation had invited and encouraged taxpayers to engage in. We feel reasonably certain that Congress had no such intention. Section 214 (e) did not, of course, mention section 120. Section 120 was literally complied with by the taxpayer's actions in the actual year 1938. There is an element of fiction about a retroactive statute which particularly justifies an interpretation which will avoid unfair and unintended consequences.

Our conclusion is that the taxpayer met the requirements of section 120 for the ten years preceding his taxable year 1946, and for the years 1946, 1947, and 1948, and the plaintiff is therefore entitled to recover, with interest as provided by law. It is not necessary for us to consider alternative arguments presented by the plaintiff.

We find that the plaintiff is entitled to recover, together with interest as provided by law, and judgment will be entered to that effect. The amount of recovery and the amount of offsets, if any, will be determined in further proceedings pursuant to Rule 38(c), 28 U.S.C.A.

It is so ordered.

JONES, Chief Judge, and LARAMORE and LITTLETON, Judges, concur.

WHITAKER, Judge, took no part in the consideration and decision of this case.

### DEPARTMENT OF HIGHWAYS OF LOUISIANA
v.
### UNITED STATES.
No. 339-52.

United States Court of Claims.
March 5, 1958.

