RAYMOND ROBINSON AND LILLIE H. ROBINSON, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5597–67.   Filed April 15, 1970.

*E. L. Cullum*, for the petitioners.
*F. Timothy Nicholls*, for the respondent.

---

774

776

OPINION

On January 10, 1964, the petitioner sold his business on the install-
ment plan. The terms of the sale complied in all respects with the
requirements of section 453(b) of the Internal Revenue Code of 1954,[3]
relating to the reporting of gain on the installment method. The
payments to be received in the taxable year of sale did not exceed 30
percent of the stated selling price. However, the contract of sale pro-
vided that no interest should be paid on the deferred payments.

On February 26, 1964, Congress enacted section 224(a) of the
Revenue Act of 1964, which added section 483 (set forth hereinabove
in fn. 1) to the Internal Revenue Code of 1954. Section 483 provides,
with exceptions not here material, that where property which qualifies
for capital gains treatment is sold on the installment basis and part of
the payments are due more than 1 year from the date of the sale, and
either no interest payments or interest payments below the rate pro-
vided by Treasury regulations are specified, a part of each payment
due after the first 6 months from the date of the sale shall be treated
as interest. Section 224(d) of the Revenue Act of 1964 [4] provides that
the provisions of section 483 shall apply to payments made after
December 31, 1963, on account of sales or exchanges of property occur-
ring after June 30, 1963, other than any sale or exchange made pursu-

---

[3] Sec. 453(b) of the Code provides in part as follows:
(b) SALES OF REALTY AND CASUAL SALES OF PERSONALTY.—
    (1) GENERAL RULE.—Income from—
        (A) a sale or other disposition of real property, or
        (B) a casual sale or other casual disposition of personal property (other than
property of a kind which would properly be included in the inventory of the taxpayer
if on hand at the close of the taxable year) for a price exceeding $1,000,
may (under regulations prescribed by the Secretary or his delegate) be returned
on the basis and in the manner prescribed in subsection (a).
    (2) LIMITATION.—Paragraph (1) shall apply—
        (A) In the case of a sale or other disposition during a taxable year beginning
after December 31, 1953 (whether or not such taxable year ends after the date of
enactment of this title), only if in the taxable year of the sale or other disposition—
            (i) there are no payments, or
            (ii) the payments (exclusive of evidences of indebtedness of the purchaser)
        do not exceed 30 percent of the selling price.
[4] Sec. 224(d) of the Revenue Act of 1964 provides as follows:
(d) EFFECTIVE DATE.—The amendments made by subsection (a) * * * shall apply
to payments made after December 31, 1963, on account of sales or exchanges of property
occurring after June 30, 1963, other than any sale or exchange made pursuant to a
binding written contract (including an irrevocable written option) entered into before
July 1, 1963. * * *

ant to a binding written contract (including an irrevocable written option) entered into before July 1, 1963.[5]

On March 25, 1964, the Internal Revenue Service issued T.I.R. 557, which contains the following:

The new section 483 provides that, with certain exceptions and limitations, where property which is a capital asset or section 1231 property is sold on the installment basis and part of the payments are due more than one year from the date of the sale or exchange and either no interest payments or interest payments below a rate provided by Treasury regulations are specified, a part of each payment due after the first six months is to be treated as an interest payment rather than as part of the sales price.

\*      \*      \*      \*      \*      \*      \*

The provisions of section 483 apply to payments made after December 31, 1963, on account of sales or exchanges of property occurring after June 30, 1963, other than any sale or exchange made pursuant to a binding written contract (including an irrevocable written option) entered into before July 1, 1963.

Internal Revenue stated that, for purposes of determining, under section 453(b)(2), whether payments received prior to January 1, 1964, in the taxable year of sale exceed 30 percent of the selling price of the property, the provisions of section 483 would have no effect.

By T.D. 6873 (approved Jan. 17, 1966), 1966–1 C.B. 101, the Treasury Department promulgated regulations under section 483 of the Code,[6] taking the position that any unstated interest shall con-

---

[5] The original proposal of the Treasury Department presented on Feb. 6, 1963, at hearings before the House Ways and Means Committee on the President's 1963 Tax Message was that the proposal subsequently enacted as sec. 483 should apply to contracts entered into after Feb. 6, 1963. See Hearings before the House Ways and Means Committee on the President's 1963 Tax Message, 88th Cong., 1st Sess., p. 156.

[6] Sec. 1.483–2, Income Tax Regs., provides in part:

Treatment as interest for purposes of Code; exceptions and limitations to application of section 483.—(a) Treatment as interest for purposes of Code—(1) Effect on income, deductions, basis, etc.—(1) In general. Generally, a contract under which there is total unstated interest (within the meaning of section 483(a)) shall be treated as if such interest were actually provided for in the contract, and such unstated interest shall constitute interest for all purposes of the Code. Thus, for example, except as provided in paragraph (b)(1) of this section, in the case of a sale of property, total unstated interest shall not be treated as part of the selling price of such property.

\*      \*      \*      \*      \*      \*      \*

(2) Other effects of treating portion of sales price as unstated interest. This subparagraph sets forth some illustrations of the effects of treating a portion of the sales price as unstated interest. These illustrations are not all-inclusive. The treatment as unstated interest under section 483 of a portion of a payment which would otherwise be treated as part of the sales price may have the effect of increasing the amount of a nondeductible loss because of the application of section 165(c) (relating to limitation on losses of individuals) or of an unallowable deduction because of section 267 (relating to losses, expenses, and interest with respect to transactions between related taxpayers), or of changing the character of gains and losses or increasing the amount of an allowable loss under section 1231 (relating to property used in the trade or business). Such treatment may affect eligibility to use of the installment method of accounting under section 453(b)(2) (relating to limitation on installment method), except that section 483 shall have no effect in determining whether payments received prior to January 1, 1964, in the taxable year of sale exceed 30 percent of the selling price of the property. Furthermore, the application of section 483 may affect the treatment of a stock option under part II,

Footnote continued on following page.

stitute interest for all purposes of the Code, and accordingly revised the regulations under section 453 of the Code [7] to provide that any unstated interest should not be included as a part of the selling price of the property. As a consequence, in the instant case, the respondent reduced the stated selling price by the amount of unstated interest which resulted in the determination that the payment received in the year of sale exceeded 30 percent of the selling price as so reduced.

It is the petitioner's position that since he sold his business prior to the enactment of section 483 and at that time complied fully with the provisions of section 453(b) of the Code, the respondent was in error in retroactively applying section 483 to deprive him of the right to return the gain upon the sale on the installment method under section 453(b).

While the petitioner apparently does not raise the issue, except as to retroactivity, of the applicability of section 483 to section 453, inherent in the issue presented is the question of the scope of section 483, and specifically the question of whether it applies in the determination of the selling price under section 453(b)(2). We think that it does. Section 483 itself provides that its provisions are to apply *for purpose of this title* (the Internal Revenue title), and the committee reports state that part of each payment to which section 483 applies is to be treated as interest *for all purposes of the Code*.[8] In regulations promulgated under sections 483 and 453 the respondent has taken the

subchapter D, chapter 1 of the Code, except that section 483 shall have no effect in determining whether options granted prior to January 1, 1965, meet the requirements of section 422(b)(4), 423(b)(6), 424(b)(1), or 424(c). Amounts treated as unstated interest under seection 483 may, if otherwise qualified under section 266 (relating to carrying charges), be charged to the capital account. The treatment of any portion of voting stock as interest under section 483 will not prevent an otherwise eligible acquisition from qualifying as a reorganization under section 368(a)(1) (relating to definitions of corporate reorganizations), although the payment of cash or property other than voting stock will prevent certain acquisitions from so qualifying. See section 368(a)(1)(B) and (C) and the regulations thereunder for rules relating to the extent to which voting stock must be exchanged by the acquiring corporation in certain reorganizations. Unstated interest shall be treated as interest for purposes of applying the source rules contained in section 861(a)(1) (relating to income from sources within the United States) and section 862(a)(1) (relating to income from sources without the United States), and for purposes of computing the amount of personal holding company income under section 543 (relating to personal holding company income) and section 1372(e)(5) (relating to election by a small business corporation). [Emphasis supplied.]

[7] Sec. 1.453-1(b)(2), Income Tax Regs., as amended, provides as follows:

(2) For purposes of section 453, any total unstated interest (as defined in section 483(b)) under a contract for the sale or exchange of property, payments on account of which are subject to the application of section 483, shall not be included as a part of the selling price or the total contract price. For rules relating to payments received prior to January 1, 1964, see Paragraph (a)(2) of section 1.483-2.

[8] H. Rept. No. 749, 88th Cong., 1st Sess., p. A84, provides in part as follows:

"Section 483(a) provides the general rule that part of each payment (under a contract for the sale or exchange of property) to which section 483 applies is to be treated as interest *for all purposes of the code*." (Emphasis supplied.)

See also S. Rept. No. 830, 88th Cong., 2nd Sess., p. 245, which incorporates the above language by reference.

position that a contract under which there is total unstated interest shall be treated as if such interest were actually provided for in the contract, that any unstated interest shall not be included as a part of the selling price for purposes of section 453(b)(2), and that the application of section 483 may therefore affect eligibility to use of the installment method of accounting.[9] In view of the express language of the statute and the accompanying committee reports, we cannot conclude that in so providing such regulations are unreasonable. See *Commissioner* v. *South Texas Lumber Co.*, 333 U.S. 496.

In support of his contention that section 483 should not be applied retroactively to deny him the benefit of section 453, petitioner points out that neither section 224 of the Revenue Act of 1964 nor H. Rept. No. 749 specifically mentions a retroactive application of section 483 to section 453, and he argues that generally a statute is not to be construed to operate retroactively unless such appears clearly to be the legislative intent.[10] Since, as held above, Congress intended section 483 to apply to section 453(b)(2), and since Congress expressly provided in section 224(d) of the Revenue Act of 1964 that the provisions of section 483 shall apply to payments made after December 31, 1963, on account of sales or exchanges of property occurring after June 30, 1963, we think it must be concluded that Congress intended section 483 to apply retroactively to section 453(b)(2). In this connection we note that in the hearings before the Senate Finance Committee it was urged that the effective date provided for in section 224(d) be changed to preclude a retroactive application of section 483. See Hearings before the Senate Finance Committee on H.R. 8363, 88th Cong., 1st Sess., pp. 2086 and 2170. Also, in such hearings concern was expressed that the application of section 483 could deny taxpayers the right to use the installment method of reporting gain. See pages 1423 and 1432 of the above hearings. Nevertheless, the only exception made to the specified retroactive application of section 483 was in regard to sales or exchanges made pursuant to binding written contracts (including irrevocable written options) entered into prior to July 1, 1963. See pages 593–594 of the above hearings. In view of the above, we consider the cases cited by the petitioner inapposite.[11]

---

[9] See fns. 6 and 7.

[10] Petitioner cites *Twenty Per Cent Cases*, 87 U.S. 179; *Chew Heong* v. *United States*, 112 U.S. 536; *Fullerton-Krueger Lumber Co.* v. *Northern Pacific Railway Co.*, 266 U.S. 435; and *Kress* v. *United States*, 159 F. Supp. 338.

[11] In regard to the *Kress* case, we further note that the taxpayer there was invited and encouraged by specific tax legislation to pursue a course of conduct over a period of years in order to obtain a particular tax benefit (the right to an unlimited deduction for charitable contributions), and it was held in that situation that Congress did not intend that a retroactive statute should deprive him of such benefit. Here the petitioner was not so invited or encouraged by any tax legislation to enter into an installment sale contract which did not provide for interest on the deferred payments. Accordingly, there is here no such ground as was present in *Kress* for concluding that Congress did not intend a retroactive application in the petitioner's situation.

The petitioner points out that the respondent in T.I.R. 557 (which was subsequently incorporated in section 1.483–2(a)(2) of the regulations) excluded sales or exchanges entered into after June 30, 1963, but prior to January 1, 1964, from the effect of applying section 483 to recompute the selling price for purpose of the 30-percent limitation of section 453(b)(2),[12] and presents the alternative argument that in so doing the respondent abused his discretion by discriminating between taxpayers similarly situated. He states that taxpayers, such as himself, who entered into installment sales between January 1, 1964, and the date of the enactment of section 483, February 26, 1964, were in essentially the same position as taxpayers who had entered into installment sales between June 30, 1963, and December 31, 1963. Petitioner apparently is of the opinion that the respondent had the authority to limit the retroactive effect of section 483 and that he abused such authority by not completely limiting the retroactive effect of the section, insofar as its applicability to section 453 is concerned. However, as heretofore pointed out, Congress expressly provided the extent to which section 483 is to apply retroactively. It seems to us that the respondent was not granted the power, in his discretion, to limit its retroactive application. See *Manhattan General Equipment Co.* v. *Commissioner*, 297 U.S. 129. We must therefore conclude that the respondent did not err in retroactively applying the provisions of section 483 to the petitioner's installment sale.

The petitioner also contends in the alternative that if the selling price for purposes of section 453(b)(2) is to be reduced by the unstated interest then we should find that the downpayment in excess of 29 percent of such reduced selling price did not constitute downpayment, citing *Lewis M. Ludlow*, 36 T.C. 102. That case, however, is clearly distinguishable. There the parties intended that less than 30 percent of the selling price be received in the year of sale. However, because of a mistaken calculation, the contract provided for a payment in the year of sale of an amount in excess of 30 percent and petitioners actually received such amount. The mistake was discovered and the petitioners in the taxable year of the sale sent to the purchaser the amount in excess of 29 percent of the selling price, although such excess amount was not actually received by the purchaser until the first day of the following year. Under these particular circumstances it was held that the payment received by the petitioners during the year of sale did not exceed 30 percent of the selling price. In the instant case there was no mistake as to the amount of payment to be received and actually received by the petitioner in 1964.

---

[12] On brief, the respondent apparently agrees that the effect of T.I.R. 557 and sec. 1.483–2(a)(2) of the regulations was to limit the retroactive effect of sec. 483, insofar as sec. 453 is concerned, to sales occurring after Dec. 31, 1963.

Although the retroactive application of section 483 to the petitioner's installment sale works a harsh result, and while we are not insensitive to the petitioner's plight, it is our conclusion, in view of all the foregoing, that we cannot afford the petitioner any relief.

*Decision will be entered for the respondent.*