DAVID O. AND MARJORIE P. ROSE, PETITIONERS *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2380-69.    Filed October 8, 1970.

*J. J. Fairbank, Jr.,* for the petitioners.
*Marion B. Morton,* for the respondent.

FORRESTER, *Judge*: Respondent has determined deficiencies in income tax for the calendar years 1965 and 1966 in the respective amounts of $1,121.38 and $826.13.

The issues involved are (1) whether the application of section 483 of the Internal Revenue Code of 1954[1] to an installment sale consummated before the enactment of that section violates the due process clause of the fifth amendment of the Constitution, and (2) whether, with respect to that installment sale, respondent is estopped from applying section 483 to installment payments received in 1965 and 1966 where respondent had audited and approved petitioners' income tax return for 1964 but had failed to timely assess any tax with respect to similar payments received by petitioners in 1964.

OPINION

All of the facts have been stipulated and are so found. The stipulation and the exhibits appended thereto are incorporated herein by reference.

David O. Rose and Marjorie P. Rose are husband and wife. For the taxable years 1965 and 1966 they filed joint Federal income tax returns with the district director of internal revenue at Richmond, Va. During 1965 and 1966 and at the time of the filing of the petition herein, they resided in Richmond, Va.

Before and during 1965 and 1966 David O. Rose (hereinafter referred to as petitioner) was engaged in the business of buying, selling, and managing investment properties. His investments were prin-

---

[1] Unless otherwise specified, all statutory references herein are to the Internal Revenue Code of 1954.

cipally in motel, hotel, and apartment realty in and around Richmond, but some of his holdings were also in unimproved real estate.

On May 1, 1961, petitioner acquired a property known as the Royal Motel. On January 1, 1964, when that property had an adjusted basis for land, buildings, furniture, and fixtures of $95,888.61, petitioner sold it to Doris Pugh for a total price of $303,300. As the parties had had extensive negotiations in the months preceding, the sale was consummated on the basis of an oral agreement. No downpayment was made at the time of sale and petitioner's selling expenses totaled $324.

The sales transaction involved the exchange of a deed to the property in return for a note secured by a first deed of trust on the property. The note, which was negotiable, provided for 180 consecutive monthly installment payments of $1,685 commencing on February 1, 1964, but it contained no provisions for interest.

Petitioner elected to report the gain from the sale on the installment basis under section 453. For the taxable year 1964, petitioner reported $10,854.36 of the gain realized as ordinary income in accordance with the recapture provisions of section 1245. For each of the taxable years 1965 and 1966, he received $20,220 as payments on the note, none of which was returned as interest.

The statutory notice of deficiency was mailed on March 7, 1969. As the statute of limitations on assessment for the taxable year 1964 had expired, only the taxable years 1965 and 1966 are in issue.

The principal question presented is whether, under section 483, a certain part of each installment payment must be reported as imputed interest income (i.e., ordinary income ineligible for capital gain treatment).

On February 26, 1964, section 483 [2] was added to the Internal Revenue Code of 1954 by section 224 of the Revenue Act of 1964.

---

[2] Sec. 483 provides in pertinent part:

INTEREST ON CERTAIN DEFERRED PAYMENTS

(a) AMOUNT CONSTITUTING INTEREST.—For purposes of this title, in the case of any contract for the sale or exchange of property there shall be treated as interest that part of a payment to which this section applies which bears the same ratio to the amount of such payment as the total unstated interest under such contract bears to the total of the payments to which this section applies which are due under such contract.

\*         \*         \*         \*         \*         \*         \*

(c) PAYMENTS TO WHICH SECTION APPLIES.—

(1) IN GENERAL.—Except as provided in subsection (f), this section shall apply to any payment on account of the sale or exchange of property which constitutes part or all of the sales price and which is due more than 6 months after the date of such sale or exchange under a contract—

(A) under which some or all of the payments are due more than one year after the date of such sale or exchange, and

(B) under which, using a rate provided by regulations prescribed by the Secretary or his delegate for purposes of this subparagraph, there is total unstated interest.

(2) TREATMENT OF EVIDENCE OF INDEBTEDNESS.—For purposes of this section, an evidence of indebtedness of the purchaser given in consideration for the sale or exchange of property shall not be considered a payment, and any payment due under such evidence of indebtedness shall be treated as due under the contract for the sale or exchange.

Pub. L. 88–272, 78 Stat. 19, 77–79. Section 224(d) of the Revenue Act of 1964 provided that section 483 would apply—

to payments made after December 31, 1963, on account of sales or exchanges of property occurring after June 30, 1963, other than any sale or exchange made pursuant to a binding written contract (including an irrevocable written option) entered into before July 1, 1963. * * *

Although petitioner was negotiating the sale of the motel during 1963, the sale was not consummated until January 1, 1964, and there is no evidence of any relevant binding written contract or option entered into before July 1, 1963. Cf. *Consolidated Utilities Co.* v. *Commissioner*, 84 F.2d 548 (C.A. 5, 1936). Therefore, any installment payments received under the contract of sale would fall within the purview of section 483.

However, petitioner argues that the application of section 483 to installment payments received in 1965 and 1966 under an installment sale consummated prior to the official enactment of section 483 is unconstitutional because it violates the due process clause of the fifth amendment. He relies upon *Untermyer* v. *Anderson*, 276 U.S. 440 (1928), which held that the retrospective application of a gift tax statute to a bona fide gift made less than 2 weeks before the enactment of the statute was "arbitrary and invalid under the due process clause of the Fifth Amendment." 276 U.S. at 445. See also *Nichols* v. *Coolidge*, 274 U.S. 531 (1927).

The force of the *Untermyer* decision has been vitiated by a later estate tax case involving the retroactive application of a provision involving gifts in contemplation of death. There the Supreme Court stated:

But a tax is not necessarily and certainly arbitrary and therefore invalid because retroactively applied, and taxing acts having retroactive features have been upheld in view of the particular circumstances disclosed and considered by the Court.

*Milliken* v. *United States*, 283 U.S. 15, 21 (1931). The Court carefully distinguished *Untermyer* and *Nichols* v. *Coolidge*, *supra*, and held that the retroactive levy of the disputed tax on a gift made in contemplation of death was constitutional. See also *Sidney* v. *Commissioner*, 273 F.2d 929, 932 (1960), affirming 30 T.C. 1155 (1958):

Taxpayers' due process argument is founded upon Untermyer v. Anderson, * * * The Supreme Court has distinguished the case on six occasions² and has expressly followed it only once.³ If Untermyer remains authority at all, it is so only for the particular situation of a wholly new type of tax there under consideration. Mr. Justice Brandeis thought the Untermyer decision itself defied authority since "for more than half a century, it has been settled that a law of Congress imposing a tax may be retroactive in its operation," * * * [Footnotes omitted.]

In any event neither *Untermyer* nor *Coolidge* is applicable because neither involved income tax statutes. *Albert K. Miller*, 40 B.T.A. 515, 516 (1939), affd. 115 F.2d 479 (C.A. 9, 1940), certiorari denied 312 U.S. 703 (1941). It is a well-established constitutional rule that Congress may provide for the retroactive operation of income tax legislation which it enacts. E.g., *Lynch* v. *Hornby*, 247 U.S. 339, 343 (1918); *Brushaber* v. *Union Pac R.R.*, 240 U.S. 1, 20 (1916); *Sidney* v. *Commissioner, supra; Southeast Equipment Corporation*, 33 T.C. 702, 705 (1960), affd. 289 F.2d 493 (C.A. 6, 1961); *Niagara Searchlight Co.*, 20 T.C. 745, 746 (1953); *Chester A. Souther*, 39 B.T.A. 197, 219 (1939); *Edgar Stanton et al., Executors*, 34 B.T.A. 451, 460 (1936); affd. 98 F.2d 739 (1938), certiorari denied 305 U.S. 650 (1938). Such operation is constitutional as long as the legislation is not "harsh, arbitrary, or unfair," *Southeast Equipment Corporation, supra* at 706, and provided that it is clear that Congress intended the results emanating from the legislation's retroactive application. See *Shwab* v. *Doyle*, 258 U.S. 529, 534, 536 (1922); *Kress* v. *United States*, 159 F.Supp. 338, 341 (Ct. Cl. 1958).[3]

In the instant case the short period of actual retroactivity was neither arbitrary nor unreasonable. Furthermore, in passing the Revenue Act of 1964, Congress intended that section 483 be applied retroactively not only to the types of transactions expressly contemplated therein, but *"for all purposes of the Code." Raymond Robinson*, 54 T.C. 772, 778 (1970), on appeal (C.A. 8, Aug. 28, 1970).

Therefore, we conclude that section 483 is applicable in determining petitioner's income tax liability for 1965 and 1966.

Since the sale was consummated on January 1, 1964, and the note provided for monthly payments beginning on February 1, 1964, petitioner would also have been liable in 1964 for tax at the ordinary rates on the "total unstated interest" component of all installment payments received after July 1 of that year. See sec. 483(c)(1). However, 1964 was not in issue and in fact petitioner claims that respondent audited and approved his 1964 income tax return without applying section 483. On the strength of that claim petitioner now argues that because respondent audited and approved his 1964 income tax return respondend is estopped from applying section 483 to the installment payments which he received in 1965 and 1966 under the 1964 contract. Aside from the fact that petitioner did not plead estoppel, no evidence of an audit

---

[3] The general rule that the retroactive application of an income tax statute does not constitute a deprivation of property without due process of law may be founded on the realization that both the probability of passage and the content of a revenue measure are usually generally known and anticipated long before the measure's official enactment. See *Welch* v. *Henry*, 305 U.S. 134, 147 (1938); *Sidney* v. *Commissioner*, 273 F.2d 928, 932 (1960).

or approval of petitioner's 1964 return appears in the stipulation of facts. See *Lodi Iron Works, Inc.*, 29 T.C. 696, 701–702 (1958).

But we should add that even if petitioner had made the requisite pleadings and presented the proof of respondent's audit and acceptance, respondent would not be estopped from adopting a different position in later years where he had overlooked the taxability of certain payments in previous years. *Lozoff* v. *United States*, 266 F.Supp. 966, 971 (E.D. Wis. 1967), affd. 392 F.2d 875 (C.A. 7, 1968) ; see *Massaglia* v *Commissioner*, 286 F.2d 258, 262 (C.A. 10, 1961), affirming 33 T.C. 379 (1959) ; *Ward* v. *Commissioner*, 240 F.2d 184, 185 (C.A. 6, 1957), affirming 25 T.C. 815 (1956).

*Decision will be entered for the respondent.*