BILLIE JAMES AND PATRICIA VIRGINIA LEDBETTER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ledbetter v. Commissioner
Docket No. 6263-85.
United States Tax Court
T.C. Memo 1986-575; 1986 Tax Ct. Memo LEXIS 31; 52 T.C.M. (CCH) 1124; T.C.M. (RIA) 86575; December 3, 1986. Billie James Ledbetter, pro se. Melanie R. Urban, for the respondent. COUVILLION
MEMORANDUM FINDINGS OF FACT AND OPINION COUVILLION, Special Trial Judge: This case was assigned pursuant to the provisions of section 7456(d) (redesignated as section 7443A by the Tax Reform Act of 1986, Pub.L. 99-514, section 1556, 100 Stat.    ) of the Code [1] and Rules 180, 181, and 182. Petitioners are husband and wife. On December 14, 1984, respondent issued three notices of deficiency, one to each petitioner, for 1979 and 1980, and a joint notice for 1981. The determined deficiencies in Federal income tax and additions to tax are as follows: [2]
Additions to Tax
Section
Section
Section
Year
Deficiency
6651(a)(1)
6653(a)
6654
1979
$1,499.00
$170.59
$74.95
$20.05
1980
$ 130.00
$ 6.50
1981
$1,124.00
$56.20
*34 The validity of the notices of deficiency as to 1979 and 1980 depends upon whether petitioners filed valid returns for these years. If valid returns were filed, the notices of deficiency for 1979 and 1980 were not timely, since the notices were issued well after the three-year statute of limitations provided by section 6501 as to each of said years. Other issues are: (1) Whether petitioners were entitled to charitable deductions for 1979, 1980, and 1981; (2) whether petitioners realized gain in 1979 upon the repossession of a truck used in their trade or business; (3) whether petitioners were entitled in 1980 and 1981 to accelerated depreciation of certain assets used in their trade or business; (4) whether petitioners realized additional gross income from their trade or business in 1981; and (5) whether petitioners are liable for the additions to tax. [3]
*35 Respondent moved for damages under section 6673. This motion was denied at trial. FINDINGS OF FACT Petitioners' legal residence was Houston, Texas, at the time their petition was filed. For 1979 and 1980, on or before the dates due for the filing of returns for said years, petitioners filed joint Forms 1040, U.S. Individual Income Tax Return, which were complete on face, except that the jurat on each return "Under penalties of perjury" was crossed out. Respondent took the position that no returns were filed for these years and, accordingly, redetermined petitioners' tax liabilities. For 1981, the return filed by petitioners was not so altered. Respondent disallowed charitable contributions to the Universal Life Church claimed by petitioners in the amounts of $9,240, $1,647, and $1,845, for 1979, 1980, and 1981. During 1979, petitioners owned a truck in a hauling business they conducted. In the latter part of 1979, petitioners' truck, a 1978 Ford F700, was repossessed. They then abandoned their hauling busines. In the transaction in which their truck was repossessed, the repossessing creditor assumed or paid a $9,000 indebtedness on the truck. Petitioners contend the *36 indebtedness on the truck was $10,800 and paid $1,800 of their own money to clear the title. The transaction was not reported by petitioners on their 1979 return. Respondent determined the repossession was a taxable event and that petitioners realized a gain of $5,461.37. In 1980 and 1981, petitioners operated an auto repair shop and claimed depreciation on a 1975 Dodge Custom Van and a 1978 Honda 750 motorcycle under the double-declining balance method authorized by section 167(b)(2). Respondent disallowed this method for the reason that the two assets were not acquired new and were initially acquired for personal use before being placed in service in petitioners' trade or business. On their 1981 return, petitioners reported gross receipts from their auto repair business of $20,384. Respondent determined this amount to be $21,042.89 and, accordingly, increased their gross receipts by $658.89. OPINION With respect to the validity of the purported returns filed by petitioners for 1979 and 1980, section 6501(a) requires respondent to assess tax within three years after the filing of a return.However, in the case of failure to file a return, no statute of limitations exists *37 and respondent may assess tax at any time. Section 6501(c)(3). Section 6061 states that: any return, statement, or other document required to be made under any provision of the internal revenue laws or regulations shall be signed in accordance with forms or regulations prescribed by the Secretary. More importantly, section 6065 provides that: Except as otherwise provided by the Secretary, any return, declaration, statement, or other document required to be made under any provision of the internal revenue laws or regulations shall contain or be verified by a written declaration that it is made under the penalties of perjury. [Emphasis supplied.] See also section 1.6065-1(a), Income Tax Regs.
The failure to sign forms in accordance with section 6065 is the equivalent of the failure of file returns required by other sections of the Internal Revenue Code. [4]United States v. Moore,627 F.2d 830, 834 (7th Cir. 1980); Beard v. Commissioner,82 T.C. 766, 777 (1984), affd. 793 F.2d 139 (6th Cir. 1986); Cupp v. Commissioner,65 T.C. 68, 78-79 (1975), affd. in an unpublished opinion 559 F.2d 1207 (3d Cir. 1977). *38 Under section 6065, petitioners failed to file returns for 1979 and 1980. Modification of printed forms, especially striking out the statement that the form was signed under penalty of perjury, invalidates an otherwise valid return and results in a failure to file.Under section 6501(c)(3), therefore, respondent's notices of deficiency were timely as to petitioners' 1979 and 1980 tax years. Petitioners contend that refunds were paid based on the returns they filed for 1979 and 1980 and argue that respondent obviously treated the documents as valid returns. Therefore, they contend the statute of limitations commenced running when their purported returns were filed. Respondent's action in refunding taxes on invalid returns did not render the documents valid returns. While respondent's action in making the refunds was inconsistent with the position asserted in the notices of deficiency, inconsistent positions by respondent do not preclude respondent from changing his position. In Coors v. Commissioner,60 T.C. 368, 406 (1973), *39 affd. 519 F.2d 1280 (10th Cir. 1975), this Court held that prior administrative determinations by respondent as to the same taxpayer did not preclude respondent from making a contrary determination for a different year. Similarly, respondent is not estopped from asserting a position, even though respondent failed to object to similar circumstances in prior years. Easter v. Commissioner,338 F.2d 968 (4th Cir. 1964), affg. per curiam a Memorandum Opinion of this Court; Caldwell v. Commissioner,202 F.2d 112 (2d Cir. 1953), affg. a Memorandum Opinion of this Court; Rose v. Commissioner,55 T.C. 28, 32 (1970). Also, respondent is not bound by the erroneous application of the law by agents of the Internal Revenue Service. Estate of Emerson v. Commissioner,67 T.C. 612, 617-618 (1977). We, therefore, dismiss petitioners' contention that the refunds of taxes validated the documents filed by them as returns. The notices of deficiency, therefore, were timely and not barred by the statute of limitations. The determinations by respondent in a notice of deficiency are presumed correct, and the burden of proof *40 to show that the determinations are wrong is on petitioners. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). With respect to petitioners' claimed charitable contributions, section 170(a) allows a deduction for the contribution to any organization organized and operated exclusively for religious or charitable (or other) purposes if no part of the net earnings of such organization inure to the benefit of any private shareholder or individual. Petitioners' deductions were made to the "Universal Life Church." The record is not clear whether their contributions were made directly to the parent Universal Life Church of Modesto, California or whether they were made to a local congregation or charter of said church owned by petitioners. Petitioner Billie James Ledbetter testified that all their contributions were in cash and were made to one "church" which, in turn, remitted the amounts given to the Universal Life Church at Modesto. Petitioners produced no valid evidence to establish that (1) contributions were made by them; (2) that such contributions were used exclusively for religious or charitable purposes, and (3) that no part of their contributions (if made) *41 did not inure to their personal benefit. [5] Accordingly, respondent's determination as to this issue is sustained.
Petitioners contend they realized no gain in 1979, when their Ford F700 truck was repossessed by a creditor, because they received no cash or other property in the transaction. In the repossession, the creditor assumed and paid a $9,000 indebtedness encumbering the truck which was owed to a bank. Petitioners contend the indebtedness was actually $10,800 and they *42 paid $1,800 of their own money in order to clear the title. Under section 1001, gain is realized when the amount realized from the sale or other disposition of property exceeds the adjusted basis of the property. Under section 1.1001-2(a)(1), Income Tax Regs., the "amount realized" includes the amount of any liability from which the transferor is discharged as a result of the sale or disposition. In this case, petitioners conveyed title to their truck in consideration for payment by the purchaser of an amount owing on the truck. Petitioners are deemed to have received the $9,000 paid by the purchaser to discharge this indebtedness, and this amount is considered to have been realized by them for purposes of determining gain or loss. However, if petitioners were required to pay a portion of an indebtedness encumbering the asset transferred, the amount paid by them would reduce or offset the "amount realized" and thus reduce the gain. Petitioners contend they paid $1,800, however, they produced no evidence, other than petitioners' uncorroborated testimony, to establish such payment. Petitioners produced a copy of the check by the purchaser to the bank in payment of the indebtedness *43 on the truck; however, the check was in the amount of $9,000 and, while there was a reference to the lien, the amount of the lien was not stated. Petitioners produced no sales agreement as to the repossession; consequently, there is nothing in the record from which we can conclude that the gain of $5,461.37 should be reduced by the $1,800 petitioners claim they paid. Accordingly, respondent is sustained on this issue. Respondent disallowed accelerated depreciation for 1980 and 1981 on a 1975 Dodge Custom Van and a 1978 Honda 750 motorcycle, both of which were admittedly used in petitioners' auto repair business. Petitioners acknowledged that the 1975 Dodge Custom Van had been acquired used; however, petitioners maintained the Honda motorcycle was purchased new. Section 167(b)(2) authorizes the depreciation of assets under a declining balance method, which does not exceed twice the straight-line method. However, under section 1.167(c)-1(a)(6), Income Tax Regs., in order for property to qualify for such method of depreciation, it is necessary that the "original use" of the property in the trade or business begins with the taxpayer. The original use of the 1975 Dodge Custom *44 Van clearly did not commence with petitioners, since they purchased the van used. Consequently, the 1975 Dodge Custom Van could not be depreciated under an accelerated method. As to the 1978 Honda motorcycle, we accept petitioners' contention that it was acquired new. However, on petitioners' purported 1980 return, the acquisition date for the motorcycle was listed on their depreciation schedule as March 1978. No depreciation was claimed for the motorcycle on their 1979 return and, based on the testimony of petitioner Billie James Ledbetter, he did not begin his auto repair business until late 1979 or early 1980, after he terminated the hauling business. We conclude, therefore, that the Honda motorcycle was placed in use in petitioners' auto repair business sometime in late 1979 or early 1980 and long after petitioners had acquired the motorcycle. The original use of the motorcycle, therefore, was not in the auto repair business. For these reasons, therefore, the Honda motorcycle could not be depreciated under the double declining balance method. Respondent's determination is sustained. With respect to the additional gross income of $658.89, which respondent determined petitioners *45 earned in their auto repair business for 1981, petitioners sustained their burden of proof on this issue. Petitioners explained they were on the cash basis of accounting and the amount at issue represented receivables from two customers who had never paid petitioners and later died. Accordingly, this adjustment is redetermined in favor of petitioners. Petitioners also bore the burden of proof with respect to the additions to tax under sections 6651(a)(1), 6653(a), and 6654. Bixby v. Commissioner,58 T.C. 757, 791 (1972).Section 6651(a)(1) applies where no return is filed or where the return is not filed timely. Section 6653(a) applies where any part of an underpayment of tax is due to a negligent or intentional disregard of rules and regulations, and section 6654(a) applies where there is an underpayment of estimated tax. Since no returns were filed by petitioners for 1979 and 1980, and no valid reasons were advanced for the failure to properly file, the additions to tax under sections 6651(a)(1) and 6653(a) are sustained. [6] The addition to tax under section 6654(a) is mandatory once a deficiency is established unless petitioners can bring themselves within *46 certain exceptions not here applicable. Grosshandler v. Commissioner,75 T.C. 1, 20-21 (1980). Accordingly, this addition to tax, determined only for 1979, is also sustained. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated; and all Rule references are to the Tax court Rules of Practice and Procedure.↩
2. The deficiencies in Federal income tax and additions to tax for 1979 and 1980 as to each petitioner are identical.↩
3. For 1980, petitioners have not challenged two adjustments, an increase in supplies expenses from $7,500 to $9,569.65, and an increase in travel and entertainment expenses from $626 to $954.15. For 1981, petitioners conceded during trial adjustments disallowing depreciation of $1,505 and an investment tax credit of $225 relating to an asset referred to as a "Hunter Brake Drum Shop." Petitioners agreed this asset was acquired in 1982 and could not be considered on their 1981 return.↩
4. See also Schroeder v. Commissioner,T.C. Memo. 1986-467; Schroeder v. Commissioner,T.C. Memo. 1986-337↩.
5. Petitioners attempted to introduce into evidence receipts prepared by Universal Life Church of Modesto personnel purporting to show the amounts petitioners donated to that organization during the years at issue. On respondent's objection, we excluded these documents as inadmissible hearsay as the personnel who prepared them were not called to testify and the documents did not fall within any exception to the hearsay rule. Fed. R. Evid. 802, 803, 804; see Davis v. Commissioner,81 T.C. 806, 814-815 (1983), affd. without published opinion 769 F.2d 931↩ (9th Cir. 1985).
6. No section 6651(a)(1) additions to tax were determined for the years 1980 and 1981.↩