T.C. Summary Opinion 2004-160


UNITED STATES TAX COURT


MARIA ANTOINETTE WALTON MITCHELL AND LARRY G. MITCHELL,
Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 1751-03S.                    Filed November 23, 2004.


Maria Antoinette Walton Mitchell and Larry G. Mitchell, pro

sese.

<u>Roger P. Law</u> and <u>Ron S. Chun</u>, for respondent.


ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to

the provisions of section 7463 of the Internal Revenue Code in

effect at the time that the petition was filed.[1]  The decision to

_____

[1]  Unless otherwise indicated, all subsequent section
references are to the Internal Revenue Code in effect for 2000,
the taxable year in issue.  All monetary amounts are rounded to
the nearest dollar.

be entered is not reviewable by any other court, and this opinion should not be cited as authority.

Respondent determined a deficiency in petitioners' Federal income tax of $1,400 for the taxable year 2000.

The issue for decision is whether $4,958 received in 2000 by petitioner Maria Antoinette Walton Mitchell for her interest in her former husband's military retired pay is includable in petitioners' gross income. We hold that it is.

Background

Some of the facts have been stipulated, and they are so found. We incorporate by reference the parties' stipulation of facts and accompanying exhibits.

At the time that the petition was filed, petitioners resided in Victorville, California. (References to petitioner in the singular are to petitioner Maria Antoinette Walton Mitchell.)

Before her marriage to petitioner Larry G. Mitchell, petitioner was married to Bobbie Leon Walton (Mr. Walton). Petitioner and Mr. Walton were married on March 3, 1973, at which time Mr. Walton was on active duty in the U.S. Air Force (USAF).[2] Petitioner and Mr. Walton separated in or about November 1985, and their divorce became final on August 29, 1986, pursuant to a final judgment (divorce judgment) entered by the Superior Court

---

[2] Mr. Walton enlisted in the U.S. Air Force on July 20, 1964.

of the State of California, San Bernardino County (the superior

court). At the time of their divorce, Mr. Walton was still on

active duty in the USAF. In the divorce judgment, the superior

court reserved jurisdiction with respect to the distribution of

petitioner's interest in the portion of Mr. Walton's military

retirement benefits earned during marriage.

On August 1, 1990, Mr. Walton retired from the USAF after 26

years on active duty and began receiving military retired pay.[3]

Petitioner subsequently petitioned the superior court with

respect to her interest in Mr. Walton's military retired pay. On

January 2, 1991, the superior court entered a Qualified Domestic

Relations Order (QDRO),[4] which states, in pertinent part:

> 2. Servicemember [Mr. Walton] retired from the
> United States Air Force on August 1, 1990, with fully
> vested retirement rights and benefits, a portion of
> which are community property of Servicemember and of
> Servicemember's former spouse, Petitioner, (hereinafter
> referred to as "Non-Servicemember") [petitioner].
>
> *    *    *    *    *    *    *
>
> 4. * * * Non-Servicemember is now entitled to an
> order dividing the military retirement to the extent
> same was earned by Servicemember during the marriage to

---

[3] Generally, a servicemember is eligible to retire and to receive nondisability military retired pay after at least 20 years of service. See 10 U.S.C. secs. 8911, 2914, 2991 (2000). There is no evidence in the record to suggest that Mr. Walton received any disability military retired pay.

[4] A QDRO is a domestic relations order that satisfies specific requirements and provides for the payment of benefits from a qualified plan to a spouse, former spouse, child, or other dependent of a plan participant. See sec. 414(p).

Non-Servicemember.

\* \* \* \* \* \* \*

8.  Non-Servicemember shall be awarded as her sole and separate property, one-half (½) of the community property interest in Servicemember's net disposable military retirement pay as set forth in the California case of <u>Mansell v. Mansell</u> decided by the U.S. Supreme Court on May 30, 1989, wherein the net disposable military retirement pay is defined as the net after deducting (a) amounts owned [sic] by the military member to the United States; (b) required by law to be deducted from total pay, including employment taxes, and fines and forfeitures ordered by courts-martial; (c) properly deducted from Federal, State and [sic] income taxes; (d) withheld pursuant to other provisions under the Internal Revenue Code; (e) deducted to pay government life insurance premiums; and (f) deducted to create an annuity for the former spouse (10 U.S.C. #1408 (a)(4)(A)-(F).

9.  The community property interest in the Servicemember's net disposable retirement pay is determined to be 48.7%.[5]

10.  Non-Servicemember's interest in Servicemember's net disposable retirement pay is determined to be 24.35%.[6]

Sometime in 1991, petitioner began receiving monthly payments from the Defense Finance and Accounting Service (DFAS) for her interest in Mr. Walton's military retired pay pursuant to the QDRO.  For the taxable year 2000, petitioner received payments from DFAS in the aggregate amount of $4,958.  DFAS

---

[5]  This percentage is calculated as follows:  The years of marriage through the date of separation (12.66 years) divided by the length of Mr. Walton's military career (26 years).

[6]  This percentage is calculated as follows:  Petitioner's one-half interest of the community property interest (.5 x 48.7 percent).

issued to petitioner a Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., for the taxable year 2000, which reported both the gross distribution and the taxable amount as $4,958 and the amount of Federal income tax withheld as zero.[7]

Petitioners timely filed a joint Form 1040, U.S. Individual Income Tax Return. On the return, petitioners did not report the $4,958 that petitioner received from DFAS.

On November 4, 2002, respondent issued to petitioners a notice of deficiency for the taxable year 2000. In the notice, respondent determined that petitioners failed to report the $4,958 in their gross income.

Thereafter, on January 27, 2003, petitioners filed with the Court an imperfect petition. On April 4, 2003, petitioners filed an amended petition disputing respondent's determinations. Paragraph 4 of the amended petition states:

> I, we disagree with all the proposed changes. Divorce papers for Maria A. Mitchell (Walton) states that taxes from her ex-spouse's retirement shall be taken from ex-spouse's allotment before Maria's allotment is given. By taking taxes from Maria's portion we feel that the same allotment is being taxed twice.

---

[7] Petitioner did not receive any statement from DFAS indicating the gross amount of Mr. Walton's military retired pay and the amount of taxes withheld in 2000.

Discussion[8]

It is a well-settled principle that State law determines the nature of the property interest created while Federal law governs the Federal taxation of that property interest. United States v. Mitchell, 403 U.S. 190 (1971). Furthermore, the tax liability for income from property attaches to the owner of such property. Eatinger v. Commissioner, T.C. Memo. 1990-310 (citing Helvering v. Clifford, 309 U.S. 331, 334 (1940); Blair v. Commissioner, 300 U.S. 5, 12 (1937); Poe v. Seaborn, 282 U.S. 101 (1930); Lucas v. Earl, 281 U.S. 111 (1930)).

In 1982, the Congress enacted the Uniformed Services Former Spouses' Protection Act (USFSPA), Pub. L. 97-252, sec. 1002, 96 Stat. 730, which added section 1408 to title 10 of the United States Code (hereinafter 10 U.S.C. sec. 1408).[9] Under 10 U.S.C. sec. 1408(c)(1) (2000), a State court may treat disposable military retired pay in a divorce proceeding either as property solely of the servicemember or as property of the military retiree and his or her spouse in accordance with the law of the

---

[8] We decide the issue in this case without regard to the burden of proof under sec. 7491(a) because the issue is essentially one of law.

[9] The USFSPA reversed the decision of the U.S. Supreme Court, which held that a State court could not order a division of nondisability military retired pay as part of a distribution of community property in divorce proceedings. See McCarty v. McCarty, 453 U.S. 210 (1981).

jurisdiction of such court.[10]  If a divorce was effective before February 3, 1991, only the "disposable retired pay", which is the total monthly retired pay to which a member is entitled less, inter alia, amounts properly withheld for Federal, State, or local income taxes, may be treated as the property of the member and his spouse.  10 U.S.C. sec. 1408(a)(4)(C) (1988); National Defense Authorization Act for Fiscal Year 1991 (NDAA), Pub. L. 101-510, sec. 555(b)(3), (e)(2), 104 Stat. 1485, 1569.  For divorces effective on or after February 3, 1991, Federal, State, and local income taxes do not serve to reduce the total monthly retired pay when determining the amount of disposable retired pay.  10 U.S.C. sec. 1408(a)(4) (1994); NDAA sec. 555(b)(3), (e)(2).

In the State of California, community property principles apply in divorce proceedings.  Consistent with these principles, each spouse is considered to have a one-half ownership interest in all property earned by either spouse during marriage.  See Cal. Fam. Code sec. 2550 (West 2004).  Under California law, military retirement benefits earned during marriage are community property.  Casas v. Thompson, 720 P.2d 921, 925 (Cal. 1986); see In re Marriage of Gillmore, 629 P.2d 1, 3 (Cal. 1981); In re

---

[10]  In its decision in Mansell v. Mansell, 490 U.S. 581 (1989), the Supreme Court confirmed that the USFSPA empowered State courts to divide only disposable nondisability military retired pay in divorce proceedings.

Marriage of Brown, 544 P.2d 561, 563 (Cal. 1976).  Accordingly, where California law applies, each spouse has a one-half interest in military retirement benefits earned during marriage.

As a general rule, the Internal Revenue Code imposes a tax on the taxable income of every individual.  See sec. 1.  For purposes of calculating taxable income, section 61 defines gross income as "all income from whatever source derived" unless otherwise specifically excluded.  Sec. 61.  Gross income specifically includes amounts derived from pensions.  Sec. 61(a)(11).  Military retired pay constitutes a pension within the meaning of that section.  See Eatinger v. Commissioner, supra ("A military retirement pension, like other pensions, is simply a right to receive a future income stream from the retiree's employer."); sec. 1.61-2(a)(1), Income Tax Regs.; sec. 1.61-11(a), Income Tax Regs. ("Pensions and retirement allowances paid either by the Government or by private persons constitute gross income unless excluded by law."); see also 31 U.S.C. sec. 9502(1)(B)(x) (1994) ("Military Retirement System" is a Government pension plan); 10 U.S.C. 1461(a) (2000) (defining the Department of Defense Military Retirement Fund).

Petitioners do not dispute that the superior court awarded petitioner a community property interest in Mr. Walton's military retired pay, and that petitioner received in 2000 total payments of $4,958, with zero Federal income tax withheld, from DFAS for

her interest.  Petitioners contend, however, that the payments petitioner received for her interest in Mr. Walton's military retired pay are not subject to income tax pursuant to the QDRO and pursuant to statements allegedly made by the superior court judge.[11]  Petitioners' contentions are misplaced.

Petitioners assert that the QDRO states that "taxes shall be taken out of ex-spouse's allotment before Maria's [petitioner's] share of allotment is given".  In essence, petitioners' assertion is consistent with the operative language of the QDRO.  The QDRO awarded petitioner as her sole and separate property a one-half interest in the community property interest in Mr. Walton's "net disposable military retirement pay".  The QDRO defined "net disposable military retirement pay" as "the net after deducting * * * properly deducted Federal, State and [sic] income taxes".  This definition is consistent with the plain language of 10 U.S.C. sec. 1408(a)(4)(C) (1988), as it was in effect when the superior court entered both the final judgment and the QDRO.  See id. (disposable military retired pay is defined as the total monthly retired pay less, inter alia, properly withheld Federal, State, and local income taxes).  Clearly, the QDRO directed that

---

[11]  Petitioners also contend that they have never reported such payments on their tax returns since 1991 and that they never received anything from the IRS until the 2000 audit.  We note that each tax year stands on its own and that the Commissioner may challenge in a succeeding year what was overlooked or condoned in previous years.  Rose v. Commissioner, 55 T.C. 28, 31-32 (1970).

petitioner's allotment is calculated based on Mr. Walton's military retired pay after income taxes are withheld (not on his gross military retired pay).  This calculation, however, does not mean that petitioner's allotment is not taxable, nor does it mean that petitioner's allotment is exempt from tax liability because taxes were already withheld on Mr. Walton's allotment.[12] Moreover, there is nothing in the QDRO stating that petitioner's interest in Mr. Walton's military retired pay is not taxable.  As a matter of law, we are aware of no provisions in either the Internal Revenue Code or the USFSPA in effect at the time of the final judgment and the QDRO excluding petitioner's allotment from gross income.

Petitioners also contend that the superior court judge purportedly stated that petitioner's portion would not be taxable.  In this regard, petitioner testified at trial that the superior court judge stated that "their code was all wives were paid and they did not have to pay taxes on the money."[13] Although petitioners did not introduce into evidence a transcript of the divorce proceedings to corroborate such purported

---

[12]  Taxes withheld on Mr. Walton's allotment would presumably have been credited to Mr. Walton's account.

[13]  At trial, petitioner repeatedly referred to a purported "penal code" that made her interest nontaxable.  Although it is unclear what purported penal code petitioner relies upon, we are not aware of any such penal code.  Rather, it is the Internal Revenue Code that governs the taxation of the payments at issue. See sec. 61(a)(11).

statement, even if petitioners had done so, it is doubtful that such statement would support their contention because the division of Mr. Walton's military retired pay is based on the QDRO, rather than on statements purportedly made at trial.

Nevertheless, the crux of petitioners' contention is that petitioner's payments are subject to double taxation.[14] In this regard, petitioners contend that they are being asked to pay income tax on the amount petitioner actually receives, which amount is calculated based on Mr. Walton's net military retired pay after income taxes are withheld.[15] However, based on the record, we are unable to determine whether double taxation would result because petitioners did not introduce any evidence demonstrating the gross amount of Mr. Walton's military retired pay and the various taxes that were withheld therefrom.

Admittedly, Congress recognized that subtracting tax withholdings from the computation of disposable retired pay created unfairness. H. Rept. 101-665, at 279-280 (1990). As a result, Congress amended the definition of "disposable retired pay" such that income taxes withheld are not taken into account

---

[14] Petitioners' contention that petitioner's payments are subject to double taxation assumes a fact not shown by the record.

[15] Petitioner also argues that she is not receiving the correct amount of money. We note that this Court is not the proper forum to address petitioner's complaint and that such complaint should be addressed to the court that has jurisdiction over the QDRO and/or to DFAS.

in computing disposable retired pay. 10 U.S.C. sec. 1408(a)(4)(C) (1988 & Supp. III 1991); NDAA sec. 555(b)(3), (e)(2). This amendment, however, is effective only for divorces entered into on or after February 3, 1991, which date is after both petitioner's final judgment and the QDRO and is therefore not applicable in the instant case. 10 U.S.C. sec. 1408(a)(4)(C) (1988 & Supp. III 1991); NDAA sec. 555(b)(3), (e)(2).

Based on the law as it was in effect on the date of petitioner's final judgment and the date of the QDRO, petitioner's interest is calculated on Mr. Walton's military retired pay less income taxes withheld. As explained earlier, petitioner's interest is taxable. Accordingly, we conclude that the $4,958 received in 2000 by petitioner for her interest in Mr. Walton's military retired pay is includable in petitioners' gross income.

However unfair the outcome in this case may seem to petitioners, the gap in the USFSPA that this case highlights is not one that can be closed by judicial fiat, and a remedy, if any, must originate with Congress.

We have considered all of petitioners' arguments, and, to the extent that we have not specifically addressed them, we conclude them to be without merit.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.