152 T.C. No. 8

UNITED STATES TAX COURT

ATL & SONS HOLDINGS, INC., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16288-16L.                    Filed March 13, 2019.

For the year 2012, the shareholders of P, an S corporation, filed an application for an extension of time to file their Federal income tax return, and they then filed their Form 1040, "U.S. Individual Income Tax Return", within the extended period. P itself did not file an application for an extension of time to file its own return, and P filed late its 2012 Form 1120S, "U.S. Income Tax Return for an S Corporation". By means of a computer-generated assessment, R assessed a penalty under I.R.C. sec. 6699 for P's failure to timely file its return. Written supervisory approval of the penalty was not obtained before it was assessed.

Held: P is liable for the I.R.C. sec. 6699 penalty (in the amount provided in that section), notwithstanding that P's shareholders obtained an extension for, and timely filed, their own tax return, and notwithstanding that the IRS allegedly excused the penalty for another year on similar facts.

Held, further, because P's I.R.C. sec. 6699 penalty was "automatically calculated through electronic means" for purposes of I.R.C. sec. 6751(b)(2)(B), written approval by an immediate supervisor did not need to precede assessment of the penalty.

Ralph T. Allen, Jr. (an officer), for petitioner.

Rachel L. Gregory and Bartholomew Cirenza, for respondent.

OPINION

GUSTAFSON, Judge:  In this collection due process ("CDP") case, petitioner ATL & Sons Holdings, Inc. ("ATL"), seeks review pursuant to section 6330(d)(1)[1] of the determination by the Office of Appeals ("Appeals") of the Internal Revenue Service ("IRS") to uphold a notice of intent to levy.  The issue is whether Appeals abused its discretion in making that determination.  Respondent, the Commissioner of the IRS, has moved for summary judgment under Rule 121, contending that there are no disputed issues of material fact and that his determination to sustain the proposed collection action was proper as a matter of

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986 as in effect at all relevant times (codified in 26 U.S.C. and referred to herein as "the Code"), and all Rule references are to the Tax Court Rules of Practice and Procedure.

law.  ATL filed a response to the motion for summary judgment.  We hold that Appeals did not abuse its discretion in determining to proceed with the proposed levy.  We will therefore grant the Commissioner's motion.

## Background

The following facts are based on the parties' pleadings and other pertinent materials in the record and are not in dispute.  See Rule 121(b).  ATL is an S corporation with two shareholders, Ralph and Casandra Allen.  ATL's principal place of business was in Maryland when it filed the petition.

Personal return for 2012

For their personal income tax return for the year 2012, due in April 2013, Mr. and Mrs. Allen timely filed a request for an extension, presumably on Form 4868, "Application for Automatic Extension of Time to File U.S. Individual Income Tax Return".  An extension to October 15, 2013, was granted and they timely filed their Form 1040, "U.S. Individual Income Tax Return", on October 14, 2013.  Because the extension had been requested and granted, the IRS did not assess any addition to tax under section 6651(a)(1) for the late filing of the personal income tax return.

S corporation return for 2012

ATL filed a Form 1120S, "U.S. Income Tax Return for an S Corporation",

for 2012. The Form 1120S was due by March 15, 2013, see sec. 6072(b), but was

filed almost six months late on September 13, 2013. No extension was requested

or granted for the filing of ATL's Form 1120S.[2]

Assessment of penalty for 2012

On November 18, 2013, the IRS assessed a penalty for late filing under

section 6699 of $2,340 with respect to ATL's tax year 2012. The assessment

appears on ATL's IRS transcript with a transaction code "166", which indicates:

"Computer generated assessment of Delinquency Penalty"; and ATL does not

dispute that its section 6699 penalty was computer-generated. No supervisory

approval of the penalty determination was obtained before the penalty was

assessed.

_____

[2]Mr. Allen initially alleged in ATL's CDP hearing request that he did file for ATL a Form 7004, "Application for Automatic Extension of Time To File Certain Business Income Tax, Information, and Other Returns". However, as we state below in part I.A, he did not produce any Form 7004 when Appeals requested a copy, and he did not allege the filing of a Form 7004 in ATL's petition. The Commissioner's motion for summary judgment shows that Appeals verified from the IRS's records that no Form 7004 was filed for ATL; and in ATL's response to the motion, Mr. Allen admits that he "ha[s] no evidence to support my filing a Form 7004" for ATL. Rather, he argues that his filing of Form 4868 to obtain an extension of time to file his Form 1040 personal income tax return should suffice for ATL's Form 1120S.

## 2013 returns

ATL asserts, and for purposes of the Commissioner's motion we assume, that for the year 2013--not at issue here--Mr. Allen made similar filings. That is, he filed Form 4868 to obtain an extension of time to file his Form 1040, but he did not file for ATL a Form 7004 to extend the filing deadline for ATL's Form 1120S. He then filed his Form 1040 and ATL's Form 1120S within the period of the extension granted for the Form 1040. The IRS initially proposed a penalty against ATL for the late Form 1120S for 2013 but later relented. However, the IRS did not so relent for 2012, the year at issue here.

## Attempted collection of 2012 penalty

On April 27, 2015, the IRS credited an overpayment for 2013 of $394.03 against ATL's outstanding 2012 penalty liability. On January 15, 2016, in an effort to collect the remaining unpaid penalty liability of $1,945.97, the IRS sent ATL a notice of intent to levy.

## Request for CDP hearing

On February 12, 2016, ATL timely mailed to the IRS a Form 12153, "Request for a Collection Due Process or Equivalent Hearing". In its CDP hearing request, ATL stated as the reason for its dispute: "I do not believe I should be responsible for penalties (see attached letter for more details)".

In the attached letter dated February 12, 2016, Mr. Allen claimed that he had requested an extension on ATL's behalf by filing a Form 7004 for 2012. Mr. Allen also claimed that ATL had reasonable cause for its failure to timely file in that it has only two shareholders and therefore no one else was harmed by its failure to timely file. In addition, Mr. Allen claimed that the IRS had prematurely applied an overpayment from ATL's 2013 tax year against its 2012 penalty liability. (ATL argues that this application was an improper levy undertaken in violation of section 6330(e)(1) before the conclusion of the CDP hearing. See infra part II.F.)

Verification

The IRS received the Form 12153 on February 18, 2016. Although the request had, in fact, been timely mailed, the IRS mistakenly treated the request as untimely and proceeded as if ATL had requested an equivalent hearing. An Appeals settlement officer ("SO") reviewed the administrative file and verified the amount due. She also verified that IRS records showed that ATL had requested no extension of the 2012 filing deadline.

Hearing before Appeals

On April 6, 2016, the SO sent ATL a letter scheduling a telephone hearing for May 9, 2016. The letter requested that ATL provide "proof you requested an extension of time to file for 2012".

ATL did not contact the SO on the scheduled date for the telephone hearing. On May 9, 2016, the SO sent ATL a letter giving it until May 23, 2016, to submit additional information. The SO did not receive any additional information from ATL. Mr. Allen faxed a letter on behalf of ATL to the SO on May 23, 2016, in which he explained why he had missed the scheduled telephone hearing, challenged his liability for the penalty, disputed the amount of the penalty, and noted that the IRS had abated a similar penalty for 2013.

Appeals' letter and ATL's petition

On June 20, 2016, the SO issued to ATL a "Decision Letter on Equivalent Hearing Under Internal Revenue Code Sections 6320 and/or 6330". The SO determined that all legal and procedural requirements for the proposed levy action had been met. The SO also determined that ATL did not submit any proof for penalty abatement consideration and did not qualify for first-time penalty abatement because of past penalty abatements. The decision letter upheld the proposed levy action.

On July 19, 2016, ATL timely filed a petition challenging Appeals' determination. On September 12, 2016, the Commissioner filed his answer, which admits that ATL's CDP request was timely submitted and that, though Appeals' determination had been incorrectly styled as a "Decision Letter on Equivalent Hearing", it was in fact a determination that we have jurisdiction to review under section 6330(d).

Motion for summary judgment

The Commissioner moved for summary judgment. In its response to the motion, ATL supplied an account transcript for the 2012 Form 1040 for Mr. and Mrs. Allen (ATL's shareholders) which shows a transaction bearing the code 460 along with the explanation that a request for an extension of time to file the shareholders' individual return was made on April 15, 2013, extending the time to file that return until October 15, 2013. In a supplement to his motion for summary judgment, the Commissioner argues that the section 6751(b)(1) supervisory approval requirement does not apply to any penalty automatically calculated through electronic means and that the section 6699 penalty at issue in this case was so calculated. ATL filed a response to that motion in which it argues that the supervisory approval requirement applies to the imposition of the section 6699 penalty and also challenges the "verification" process for approval of that penalty.

Discussion

I.     General legal principles

    A.    Summary judgment standard

The purpose of summary judgment is to expedite litigation and avoid unnecessary trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). The Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994).

In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. Sundstrand Corp. v. Commissioner, 98 T.C. at 520. However, the nonmoving party may not rest upon mere allegations or denials of his pleadings but instead must set forth specific facts showing that there is a genuine dispute for trial. Rule 121(d); see Sundstrand Corp. v. Commissioner, 98 T.C. at 520. Mr. Allen once alleged, in ATL's request for a CDP hearing, that ATL had filed a Form 7004; but in his motion the Commissioner showed that, during the "verification" process required by section 6330(c)(1), the SO determined that ATL had filed no request for an extension of the filing deadline for its Form 1120S, and

ATL made no response to Appeals' request that it provide "proof you requested an extension of time to file for 2012." In its petition filed with this Court, ATL did not allege that it filed a Form 7004; and in ATL's response to the Commissioner's motion, Mr. Allen admitted that he "ha[s] no evidence to support my filing a Form 7004" for ATL.

We therefore conclude that no material facts are "genuine[ly in] dispute", see Rule 121(b), and that this case is appropriate for summary adjudication.

B. Standard of review

Section 6330(d)(1) does not prescribe the standard of review that this Court should apply in reviewing an IRS administrative determination in a CDP case. Where the validity of the underlying tax liability was properly at issue in the CDP hearing, the Court reviews the Commissioner's determination de novo. Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). The Court reviews for abuse of discretion other determinations not involving the underlying liability. Craig v. Commissioner, 119 T.C. 252, 260 (2002). Abuse of discretion occurs when a determination is arbitrary, capricious, or without sound basis in fact or law. See Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006).

By raising the issue of reasonable cause, by disputing the amount of the penalty, and by contending that the IRS's favorable treatment as to 2013 entitled ATL to favorable treatment as to 2012, ATL challenged its underlying penalty liability during the CDP hearing and in the petition filed with this Court. Therefore, the de novo standard of review applies with regard to the issue of ATL's underlying liability for the penalty. See Goza v. Commissioner, 114 T.C. at 181-182. As to the nonliability issues that ATL raises, we review them under an abuse of discretion standard. See Craig v. Commissioner, 119 T.C. at 260.

C.      Collection due process principles

If a taxpayer fails to pay any Federal tax liability after demand, section 6331(a) authorizes the IRS to collect the tax by levy on the taxpayer's property. However, the IRS must first issue a final notice of intent to levy and notify the taxpayer of the right to an administrative hearing before the Office of Appeals. Sec. 6330(a) and (b)(1). After receiving such a notice, the taxpayer may request an administrative hearing before Appeals. Sec. 6330(a)(3)(B), (b)(1).

At the CDP hearing, the Appeals officer must determine whether the proposed collection action may proceed. The Appeals officer is required to take into consideration several things:

First, the Appeals officer must obtain verification that the requirements of any applicable law and administrative procedure have been met by IRS personnel. See sec. 6330(c)(1), (3)(A). (Where the supervisory approval requirement of section 6751(b)(1) applies, the Appeals officer should obtain verification that such approval was obtained, see Rosendale v. Commissioner, T.C. Memo. 2018-99, at *14; but as we discuss below in part II.E, no such approval was required in this case.) ATL has raised no other verification issue in this case.

Second, under section 6330(c)(3), the Appeals officer must consider "any relevant issue relating to the unpaid tax or the proposed levy", sec. 6330(c)(2)(A), including any "collection alternatives" proposed by the taxpayer, sec. 6330(c)(2)(A)(iii). ATL proposed no collection alternative, so we need not address any such issue; but a "relevant issue" that ATL did raise is the allegedly premature application of the 2013 credit, discussed below in part II.F.

And third, the Appeals officer must determine "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary", sec. 6330(c)(3)(C), an issue that ATL has not raised and that we do not address.

In addition, pursuant to section 6330(c)(2)(B), a taxpayer in certain circumstances may challenge the underlying tax liability in a CDP hearing. ATL makes such a challenge as to the 2012 penalty at issue here by disputing the application of the penalty to its return (which we discuss below in part II.A), by disputing the amount of the penalty that the IRS assessed (see part II.B), by invoking the IRS's alleged different treatment of another year (see part II.C), and by asserting a defense of "reasonable cause and good faith" (see part II.D).

II.     Analysis

   A.     The failure-to-file penalty of section 6699

An S corporation is required to file an annual information return on Form 1120S. See sec. 6037(a); 26 C.F.R. sec. 1.6037-1(a), Income Tax Regs. Section 6699(a) provides in pertinent part that an S corporation that does not file its annual return within the time prescribed (including any extension of time for filing) "shall be liable for a penalty determined under subsection (b) for each month (or fraction thereof) during which such failure continues (but not to exceed 12 months), unless it is shown that such failure is due to reasonable cause." Section 6699(b) provides that "the amount determined under this subsection for any month is the product of * * * $195, multiplied by * * * the number of persons who were shareholders in the S corporation during any part of the taxable year."

ATL's Form 1120S was due to be filed March 15, 2013, see sec. 6072(b), but it was not filed until almost six months later on September 13, 2013. The return was therefore late, and the penalty of section 6699 applies.

It is possible to obtain an extension of the filing deadline; and if a Form 1120S is filed by that extended deadline, then the S corporation will not incur the penalty; but in this case no extension was obtained. It is true that the shareholders of ATL applied for and received an extension of time to file their own 2012 Form 1040; and ATL seems to argue that this extension should have applied also to ATL's deadline for filing its Form 1120S.

However, an S corporation is an entity separate from its shareholders. In general, the S corporation does not incur a liability for Federal income tax. Sec. 1363(a). But see infra note 9. Rather, its shareholders are taxed on their respective shares of the S corporation's income. Sec. 1366(a)(1). As we noted above, an S corporation is required to file an annual information return on its own Form 1120S, and on that return it reports its own income, deductions, and other matters. Sec. 6037(a); 26 C.F.R. sec. 1.6037-1(a), Income Tax Regs. To extend the time to file the S corporation return, a separate form--Form 7004--is required. See 26 C.F.R. sec. 1.6081-3(a)(1), Income Tax Regs.; 2012 Instructions for Form

1120S.  ATL did not file Form 7004 nor any other document requesting an extension of the deadline for filing its 2012 Form 1120S.

   B.   Penalty amount

Under section 6699(a), the penalty for failure to file an S corporation return is imposed for each month or fraction thereof for which the failure to file continues--in this case, five months plus most of an additional month, for a total of six months.  The amount of that penalty for each month is determined by multiplying $195 by the number of persons who were shareholders in the S corporation during any part of the taxable year.  Sec. 6699(b).  In this case, since ATL had two shareholders, the monthly penalty amount was $390 (i.e., 2 × $195 = $390).  Since ATL's Form 1120S was six months late, the penalty imposed by the statute was $2,340 (i.e., 6 × $390 = $2,340)--the amount that the IRS assessed.

ATL argues that the amount of the penalty under section 6699 should be tied to the amount of tax due.  Specifically, ATL argues that the penalty is the smaller of $135 or 100% of the tax paid late.  However, this limit that ATL mistakenly posits is in fact the minimum amount of the addition to tax imposed under section 6651 (as in effect for 2012) for certain failures to file, see sec. 6651(a) (flush language), not a limit on the penalty under section 6699.  The limitation to the section 6699 penalty is different:

The penalty for a late Form 1120S will not exceed 12 times the monthly penalty amount (i.e., $195 multiplied by the number of shareholders)--in this case, 2 shareholders × $195 × 12 months = $4,680.  In this case, not 12 months but only 6 months' worth of penalty was imposed (i.e., only $2,340), so the statutory limit was not exceeded.  Contrary to ATL's argument, the section 6699 penalty is imposed without regard to any amount shown on the S corporation's return or to any amount of tax paid late by the shareholders.

####    C.    Treatment in subsequent year

ATL seems to argue that it should be entitled to abatement of the section 6699 penalty because, ATL claims, the same penalty was excused for taxable year 2013 after ATL made an inquiry to the IRS and pointed out the extension that had been obtained for the shareholders' Form 1040.  ATL is mistaken on this ground. Each tax year stands on its own and must be separately considered.  See United States v. Skelly Oil Co., 394 U.S. 678, 684 (1969).  The Commissioner may challenge in a succeeding year what was condoned or agreed to for a prior year. See Rose v. Commissioner, 55 T.C. 28, 31-32 (1972).

D.     Reasonable cause and good faith

As we have noted, the section 6699 penalty is imposed on a failure to file an S corporation return "unless it is shown that such failure is due to <u>reasonable cause</u>". Sec. 6699(a) (emphasis added). No regulations have been issued to elaborate on this provision; but regulations under the analogous provision of section 6651(a)(1) (imposing an addition to tax for failure to file a return) provide that a taxpayer can show reasonable cause for the failure to timely file a return if "the taxpayer exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time". 26 C.F.R. sec. 301.6651-1(c)(1), Proced. & Admin. Regs. ATL did not present any argument or other evidence showing that it exercised such care and prudence or that it was unable to timely file the Form 1120S.

Instead, ATL argues that the reasonable cause exception should apply because ATL's two shareholders were aware of the business loss for taxable year 2012 and "no one else has been harmed"--i.e., no harm, no penalty. ATL evidently conceives that the sole purpose of the Form 1120S is to give a shareholder the information that he or she needs in order to file a Form 1040 tax return; and since Mr. and Mrs. Allen knew the affairs of ATL, did eventually file their Form 1040 timely (under an extension), and did not fail to report any income,

the intended purpose of the S corporation's filing requirement was accomplished and the penalty was moot. ATL cites no authority in support of its claim that the penalty should be waived on the grounds that its two shareholders were aware of the information to be shown on the return. Section 6699 does not include a condition of harm before the penalty is imposed; it simply imposes a penalty when the filing is late (without reasonable cause). A taxpayer may not disregard a filing deadline and be excused from this penalty simply because it reckons that no harm was done.

E. Supervisory approval under section 6751(b)(1)

1. Section 6751(a)(1) and its exceptions

Section 6751(b)(1) provides: "No penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination or such higher level official as the Secretary may designate." If supervisory approval is not obtained for a penalty subject to section 6751(b)(1), then the penalty cannot be sustained. See Graev v. Commissioner, 149 T.C. 485, 493 (2017), supplementing and overruling in part 147 T.C. 460 (2016). However, under exceptions in section 6751(b)(2), that supervisory approval requirement in section 6751(b)(1) is excused:

SEC. 6751(b).  Approval of Assessment.--

*    *    *    *    *    *    *

(2)  Exceptions.--Paragraph (1) shall not apply to--

(A)  any addition to tax under section 6651, 6654, or 6655; or

(B)  any other penalty automatically calculated through electronic means.

The Commissioner contends that the section 6699 penalty falls within these exceptions, and ATL contends that it does not.

2.    Explicit exceptions in section 6751(b)(2)(A)

Section 6751(b)(2)(A) provides that the supervisory approval requirement does not apply to "any addition to tax under section 6651, 6654, or 6655".  None of those additions to tax is at issue here, but to construe the exception in section 6751(b)(2)(B), it will be helpful to note these exceptions in section 6751(b)(2)(A).

Section 6651(a) imposes additions to tax for certain failures:

• Section 6651(a)(1) imposes an addition to tax (i.e., a monthly percentage of tax required to be shown) for "failure * * * to file * * * on the date prescribed therefor" certain returns; and section 6651(f) increases the amount of the addition to tax where the "failure to file any return is fraudulent".  (Emphasis added.)

- Section 6651(a)(2) imposes an addition to tax (i.e., a monthly percentage of tax shown on certain returns) for "<u>failure * * * to pay</u> the amount shown as tax * * * on or before the date prescribed for payment". (Emphasis added.)

- Section 6651(a)(3) imposes an addition to tax (i.e., a monthly percentage of tax required to be shown on certain returns) for "<u>failure * * * to pay</u> any amount in respect of any tax required to be shown on a return * * * <u>[after] notice and demand</u>". (Emphasis added.)

Each of the three paragraphs of section 6651(a) imposes its addition "unless it is shown that such failure is due to reasonable cause and not due to willful neglect".

Section 6654 provides that an amount "shall be added to the tax" when there is failure by an <u>individual</u> to pay "estimated tax". Rather than having a "reasonable cause" exception as in section 6651(a)(1), (2), and (3), section 6654 has a more limited "Waiver in certain cases", sec. 6654(e)(3)--i.e., "to the extent the Secretary determines that by reason of casualty, disaster, or other unusual circumstances the imposition of such addition to tax would be against equity and good conscience", sec. 6654(e)(3)(A), or if an underpayment by a newly retired or disabled taxpayer "was due to reasonable cause and not to willful neglect", sec. 6654(e)(3)(B).

Section 6655 provides that an amount "shall be added to the tax" when there is failure by a <u>corporation</u> to pay "estimated tax". Section 6655 has no "reasonable cause" exception.

All those additions to tax are excepted from section 6751(b)(1), and they may be assessed without supervisory approval. But again, none of those additions to tax excepted by section 6751(b)(2)(<u>A</u>) is at issue here.

3. <u>The "automatically calculated through electronic means" exception in section 6751(b)(2)(B)</u>

Rather, the Commissioner invokes section 6751(b)(2)(<u>B</u>), which provides a further exception to the supervisory approval requirement for "any other penalty automatically calculated through electronic means." We must therefore determine whether, for purposes of this exception, the section 6699 penalty is an "other penalty automatically calculated through electronic means".

a. <u>Comparators in section 6751(b)(2)(A)</u>

Neither the statute nor the regulations define the phrases "automatically calculated" and "electronic means" that appear in section 6751(b)(2)(B).[3]

---

[3]The IRS has explained the provision to its employees as follows: "A penalty is only considered to be 'automatically calculated through electronic means' if no Service human employee makes an independent judgment with respect to the applicability of the penalty." Internal Revenue Manual pt. 20.1.1.2.3(5) (Nov. 21, 2017); <u>cf. id.</u> pt. 20.1.1.2.3(5) (Nov. 25, 2011) ("the

(continued...)

However, the statute gives an important aid to the interpretation of those phrases by the use of the word "other". Subsection (b)(2)(A) gives the explicit exceptions, and then subsection (b)(2)(B) expands the exception to "any <u>other</u> penalty automatically calculated through electronic means". (Emphasis added.) This "other" provision in subsection (b)(2)(B) suggests that the explicit exceptions in subsection (b)(2)(A) are likewise "automatically calculated". Therefore, we can consider the explicit exceptions in subsection (b)(2)(A) to be comparators, and we can conclude that penalties not explicitly listed in subsection (b)(2)(A) are "automatically calculated" under subsection (b)(2)(B) (and are exempt from the supervisory approval requirement) to the extent that they are similar to those subsection (b)(2)(A) comparators in the manner of their "automatic[] calculat[ion] through electronic means".

b. <u>"[A]utomatically calculated"</u>

The section 6699 penalty at issue here is a monthly penalty for failure to timely file an information return; and the penalty explicitly excepted in section 6751(b)(2)(A) that is most similar to the section 6699 penalty is the addition to tax

---

[3](...continued) assessment of a penalty qualifies as one calculated through electronic means if the penalty is assessed <u>free</u> of any independent determination by an IRS employee as to whether the penalty should be imposed against a taxpayer").

in section 6651(a)(1) for failure to timely file other returns, explained above. Section 6651(a)(1) imposes an addition to tax--in the amount of 5% per month (with a maximum of 25%) of the amount of the tax due--for "failure * * * to file any return required under authority of subchapter A of chapter 61 (<u>other than part III</u> thereof) * * * on the date prescribed therefor". (Emphasis added.) Section 6651(a)(1) penalizes the late filing of an individual income tax return, the filing of which is required by section 6012(a) in <u>part II</u> of subchapter A of chapter 61. If one knows the tax liability, the date the return was due, and the date it was filed, then the amount of the addition to tax is a simple and automatic computation. Pursuant to section 6751(b)(2)(A), no supervisory approval is required for this arithmetical addition to tax imposed by section 6651(a)(1).

That late-filing addition to tax of section 6651(a)(1) does not reach a late information return filed by an S corporation. Rather, the filing of Form 1120S is required under the authority of section 6037, which is in part III ("Information Returns") of subchapter A of chapter 61. This exclusion of an S corporation's part III "information return" from the section 6651(a)(1) addition to tax is logical, if not inevitable, because the information return generally does not report tax due (<u>but see</u> <u>infra</u> note 9), and a penalty of 5% of the tax due to be reported on the typical S corporation return would be zero. Rather, a late S corporation return is

penalized by section 6699, which imposes a monthly penalty not of a percentage of tax due (generally zero) but instead of a fixed amount ($195 per shareholder). Thus, if one knows the number of shareholders, the date the return was due, and the date it was filed, then the amount of this penalty is a simple and automatic computation.

c. "[E]lectronic means"

Moreover, in circumstances like ATL's,[4] the section 6699 penalty computation is accomplished "through electronic means" within the meaning of section 6751(b)(2)(B). As we noted above, the assessment of ATL's penalty was, according to the IRS transcript, a "Computer generated assessment of Delinquency Penalty". (Emphasis added.) We recently held in Walquist v. Commissioner, 152 T.C. ___, ___ (slip op. at 15) (Feb. 25, 2019), that where "the penalty was determined mathematically by a computer software program without the involvement of a human IRS examiner, * * * the penalty was 'automatically

---

[4]We do not here address circumstances (if they exist) in which the section 6699 penalty might be calculated by other than "electronic means". For example, if in a Tax Court case the Commissioner's attorneys were to plead, as new matter in the answer, a liability for the section 6699 penalty, that would seem to be a situation materially different from ATL's and would require a different analysis that we do not attempt here.

calculated through electronic means,' sec. 6751(b)(2)(B), as the plain text of the statutory exception requires."

The supervisory approval requirement in section 6751(b)(1) does not apply to "any addition to tax under section 6651 * * * <u>or * * * any other penalty</u> automatically calculated through electronic means." (Emphasis added.) We conclude that the section 6699 penalty imposed against ATL for its late S corporation return is, like the section 6651(a)(1) addition to tax for late filing, a "penalty automatically calculated through electronic means."

> 4. <u>ATL's contention</u>

ATL argues to the contrary. Quoting an argument by the National Taxpayer Advocate,[5] ATL states--

---

[5]Nina E. Olson, "IRS Administrative Policy and Recent Litigation Weaken Supervisory Approval Requirement for Penalties", Taxpayer Advocate Service: NTA Blog (Oct. 4, 2017), https://taxpayeradvocate.irs.gov/news/nta-blog-irs-policy-weakens-requirements-for-penalties. In the quoted article, the National Taxpayer Advocate seems to be arguing what the law and IRS practice should be, not necessarily what they are. If ATL means to argue what the law <u>should</u> be, then its argument would be properly addressed to Congress. We attempt here to discern ATL's contention about what the law is.

The IRS maintains that penalties calculated through its AUR[6] program are automatically calculated through electronic means and thus do not require supervisory approval under IRC § 6751(b). However, in determining whether to assert the accuracy-related penalty based on negligence,[7] the IRS should examine whether the taxpayer's actions constituted a <u>reasonable attempt to comply</u> with the tax laws, which can be demonstrated by the <u>taxpayer's facts and circumstances</u>. * * * By using an automated process to assert these penalties and not having a supervisor review the determinations, the IRS does not consider the facts and circumstances of a case until the taxpayer contacts the IRS to challenge the proposed penalty. Taxpayers who did make <u>reasonable attempts to comply and acted in good faith</u> must take extra, burdensome steps to rid themselves of arbitrary penalties.  [Emphasis added.]

By quoting an argument that refers to "reasonable attempts", "good faith", and "facts and circumstances", ATL may be arguing that a determination of a penalty like the section 6699 penalty--which applies "unless it is shown that such failure is due to reasonable cause"--is not "automatically calculated".  We address ATL's "reasonable cause" argument above in part II.D; but here we address the

---

[6]ATL states:  "The IRS has interpreted this exception [in section 6751(b)(2)(B)] to include any penalties calculated through its Automated Under Reporter (AUR) program, which matches income reported on a taxpayer's return with income reported to the IRS by third-party payors.  In my case, I owed no taxes so the AUR program was not in play here."

[7]The accuracy-related penalty based on negligence, imposed by section 6662(a) and (b)(1), is not at issue in this case, which concerns only the penalty under section 6699.  We do not address here the question whether the penalty for negligence can be deemed "automatically calculated" if asserted under the IRS's AUR mechanism.

suggestion that the statute's provision for "reasonable cause" prevents the penalty from being "automatically calculated".

If this is ATL's argument, we think that it must fail. Almost all of the additions to tax explicitly excepted in section 6751(b)(2)(A) have some form of "reasonable cause" provision (as we pointed out above in part II.E.2), yet section 6751(b)(2)(B) excepts "<u>other</u> penalt[ies] automatically calculated". Evidently, a penalty can be "automatically calculated" for purposes of section 6751(b)(2)(B) even if non-arithmetical issues might be invoked to challenge the liability so calculated. The section 6699 penalty applies unless reasonable cause "is shown"--i.e., shown by the taxpayer.

In litigation a taxpayer's contention of "reasonable cause" is in the nature of an affirmative defense, which the taxpayer is obliged to raise.[8] That is, the Commissioner establishes the liability without having to anticipate and negate any

---

[8]Even in a case in which, under section 7491(c), the Commissioner has the initial "burden of production" with respect to a penalty liability, once the Commissioner carries that burden, the taxpayer then has the burden to raise "reasonable cause" as an affirmative defense. See <u>Fleming v. Commissioner</u>, T.C. Memo. 2017-120, at *6 ("The Commissioner bears the burden of production with respect to a taxpayer's liability for additions to tax. <u>See</u> sec. 7491(c); <u>Higbee v. Commissioner</u>, 116 T.C. 438, 446 (2001). Once the Commissioner carries the burden of production, the taxpayer must come forward with persuasive evidence that the Commissioner's determination is incorrect or that the taxpayer had <u>an affirmative defense, such as reasonable cause</u> and good faith. <u>See Higbee v. Commissioner</u>, 116 T.C. at 446-447" (emphasis added)).

"reasonable cause" argument that the taxpayer might raise. Similarly, in tax administration the IRS will often not know facts that might bear on a potential "reasonable cause" defense; so where a penalty can be automatically calculated by reference to objective facts that the IRS can determine by reference to the return and its filing, the burden is properly on the taxpayer to raise "reasonable cause". The possibility of such a defense does not change the fact that the penalty itself is "automatically calculated".

Thus, where the penalty imposed by section 6699 on the late filing of an S corporation's return is automatically calculated by electronic means, it is excepted by section 6751(b)(2)(B) from the supervisory approval requirement of section 6751(b)(1). The IRS may assess the section 6699 penalty without the written approval of an immediate supervisor having been obtained.

F.    Application of overpayment credit

ATL also disputes the crediting of an overpayment from its 2013 tax year Form 1120S[9] to the section 6699 penalty liability at issue in this case.

---

[9]The record does not explain how a 2013 overpayment arose for ATL. As we have noted, generally an S corporation is not subject to income tax. However, subchapter S does impose various taxes on certain S corporations, including a tax on built-in gains and a tax on net passive income. See secs. 1374, 1375. An S corporation must pay estimated tax for these taxes. Sec. 6655(g)(4). An S corporation may therefore have an overpayment if the sum of its estimated tax

(continued...)

Specifically, ATL argues that it was improper for the IRS to apply its 2013 overpayment before the issuance of the notice of intent to levy. It is true that section 6330(a)(1) generally prohibits a levy before the IRS gives the taxpayer notice of the proposed levy and of his right to a CDP hearing; and it is true that once a CDP hearing is timely commenced, section 6330(e)(1) generally prohibits a levy before the conclusion of the CDP hearing.

However, those prohibitions bar only collection by levy. The Code specifically authorizes the IRS to credit overpayments "against any liability in respect of an internal revenue tax on the part of the person who made the overpayment". Sec. 6402(a). Nothing in section 6330 prohibits the IRS from engaging in other nonlevy collection actions, including offsetting payments from other periods, as the IRS did in this instance. Boyd v. Commissioner, 451 F.3d 8 (1st Cir. 2006) (stating that informal offset procedures are not generally subject to the procedural protections for levies), aff'g 124 T.C. 296 (2005); 26 C.F.R. sec. 301.6330-1(g)(2), Q&A-G3, Proced. & Admin. Regs. ATL has cited no authority

---

[9](...continued) payments, any overpayment credits from prior tax years, and certain other credits exceeds its actual liability for the tax on built-in gains, the tax on net passive income, and any applicable estimated tax penalty.

that would render improper the crediting that the IRS performed here, and we know of none.

III.  Conclusion

In sum, there is no genuine dispute as to any material fact.  Finding no error or abuse of discretion in Appeals' determination, we will grant summary judgment for the Commissioner and sustain the proposed levy.

To reflect the foregoing,

An appropriate order and decision

will be entered.